UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| RONALD LAW, | ) | |
| | ) | |
| Plaintiff, | ) | 3:12-CV-00261-LRH-VPC |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| KINROSS GOLD U.S.A., INC., | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Kinross Gold U.S.A., Inc.'s ("Kinross") Motion for Summary Judgment. Doc. #30.[1] Plaintiff Ronald Law ("Law") filed an Opposition (Doc. # 42), to which Kinross replied (Doc. #46).

**I.   Factual Background**

This case arises out of Law's employment with and subsequent termination from Kinross. In January 2007, Kinross hired Law as an accounting manager. Doc. #30, Ex. B, ¶2. Kinross' employee guidelines explicitly state that employees are "at-will." Doc. #30, Ex. A, p. 4. The guidelines also contain information for reporting work-related injuries, obtaining worker's compensation, as well as submitting Family and Medical Leave Act ("FMLA") claims. Doc. #30, Ex. A, pp. 16-17, 50-52.

---

[1]   Refers to the Court's docket number.

Throughout Law's employment at Kinross, he developed a pattern of "making false allegations of retaliation and asserting unsupported allegations of fraud." Doc. #30, Ex. B, ¶6; Doc. #30, Ex. O; Doc. #30, Ex. P; Doc. #30, Ex. Q; Doc. #30, Ex. R. Kinross investigated these allegations and, where warranted, took action to resolve any issues.[2] Doc. #30, Ex. B, ¶17. In January 2009, Kinross' management began discussing Law's termination. Doc. #30, Ex. C. In February 2009, it was determined that, due to concerns regarding timing and locating a replacement for Law, mid-April would be an appropriate time to officially terminate Law's employment. *See* Doc. #30, Ex. C; Ex. D. Kinross based its decision to terminate Law on "his inability to communicate with Kinross' managers and employees, his track record of making false allegations of retaliation against him, his history of asserting unsupported allegations of fraud, and his combative work manner." Doc. #30, Ex. B, ¶8.

On April 5, 2010, Law sent an email to various Kinross employees, which contained allegations of fraud and harassment against Kinross employees. *See* Doc. #30, Ex. F. Many of these allegations had been previously asserted and investigated by Kinross. *See* Doc. #30, Ex. O; Doc. #30, Ex. P; Doc. #30, Ex. Q; Doc. #30, Ex. R. As a result of the April 5, 2010 email, Kinross placed Law on paid leave pending an investigation into Law's allegations. Doc. #30, Ex. H; Doc. #30, Ex. I. On April 6, 2010, Kinross became aware that Law had been admitted to the hospital. Doc. #30, Ex. A, ¶12; Doc. #30, Ex. K. On April 12, 2010, Kinross provided Law with the requisite forms to request FMLA leave. Doc. #30, Ex. L. Law did not return the completed forms to Kinross or otherwise provide Kinross with a request for FMLA leave. Doc. #30, Ex. A, ¶13.

On May 14, 2010, Law's employment with Kinross was terminated. Doc. #30, Ex. J. In a letter memorializing Law's termination, Kinross identified a number of reasons for Law's termination. Specifically, Kinross cited "numerous allegations of wrongdoing, both against the Company and individuals employed by the Company" since September 2008. Doc. #30, Ex. J, p.

---

[2] Law does not dispute that Kinross investigated his allegations or took curative action where warranted.

1  KIN001276. Kinross further explained that "[Law's] communications have contained false and
2  defamatory statements" and stated that "Kinross has looked into [his] allegations and found they
3  were either without merit, or in a few instances were legitimate issues that had already been
4  identified and were being handled by Kinross in a responsible manner." *Id.* Kinross explicitly
5  cited Law's April 5, 2010 email as one such instance of "previously investigated" and "unfounded
6  allegations." *Id.* Finally, Kinross identified various false representations that Law had made as to
7  his qualifications when he applied for and throughout his employment at Kinross.[3] *Id.* at
8  KIN001276-77; Doc. #30, Ex. S.

On October 17, 2010, five months after his termination, Law submitted a letter pursuant to
Kinross' whistleblower policy alleging various irregularities and/or fraud, control issues, and
retaliation, many of which had been previously raised and investigated. Doc. #30, Ex. N ;Ex. B,
¶¶16-17. In response thereto, Kinross retained counsel to conduct an independent assessment of
Law's allegations. Doc. #30, Ex. B, ¶18. Ultimately, it was determined that Law's allegations
lacked merit, lacked credible support, and were not made in good faith. Doc. #30, Ex. B, ¶19; Doc.
#30, Ex. U, p. 3. Specifically, the investigation revealed that "the evidence not only refuted
[Law's] allegations, but in many instances suggested that [Law] deliberately misrepresented the
facts or should have known that his allegations were false."[4] *Id.*; Doc. #30, Ex. U, p. 3.

On May 14, 2012, Law commenced this action against Kinross, alleging: (1) violation of
the FMLA, 42 U.S.C. § 2601, *et seq.*; (2) breach of contract; (3) breach of the implied covenant of
good faith and fair dealing; (4) tortious retaliation and discharge in violation of public
policy—illegal conduct; (5) tortious retaliation and discharge in violation of public
policy—worker's compensation; (6) tortious retaliation and discharge in violation of public

---

[3] Law disputes that he misrepresented his status as a Certified Public Accountant ("CPA") and a Certified Management Accountant ("CMA"). *See* Doc. #43, Ex. 2, ¶¶5-7.

[4] Law does not dispute these findings. Law merely states that "[t]o [his] knowledge, [he] never made a false allegation to [Kinross] and [Kinross] never informed that [he] had." Doc. #43, Ex. 2, ¶8.

3

1  policy—free speech; and (7) tortious retaliation and discharge in violation of public policy—access
2  to courts. *See* Doc. #1. On August 30, 2013, Kinross filed the present Motion for Summary
3  Judgment before the Court. Doc. #30.

**II.     Legal Standard**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001). On an issue as to which the non-moving party has the burden of proof, however, the moving party can prevail merely by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case. *Celotex*, 477 U.S. at 323.

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary

judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

### III. Discussion

#### A. FMLA Interference[5]

Pursuant to 29 U.S.C. § 2615(a)(1), it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" the substantive rights guaranteed by the FMLA. In order to establish a claim for FMLA interference where an employer fails to reinstate the employee: "the employee must establish that: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (internal citations and quotation marks omitted). An employee can "prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." *Id.*

Here, the Court finds that Law has failed to establish a claim for FMLA interference. First, Law has presented no evidence whatsoever that he was entitled to leave under the FMLA.

---

[5] It appears that Law's claim for violation of the FMLA is premised on both a theory of interference and a theory of retaliation. *See Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011) ("[c]ourts have recognized two theories for recovery on FMLA claims under § 2615, the retaliation or discrimination theory and the entitlement or interference theory") (quoting *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002)) (internal quotation marks omitted). However, "the anti-retaliation or anti-discrimination provisions do not cover visiting negative consequences on an employee simply because he has used FMLA leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001). Such claims are properly analyzed under section 2615(a)(1), the provision governing interference with the exercise of rights. *Id.* "In contrast, where an employee is punished for opposing unlawful practices by the employer, the issue then becomes one of discrimination and retaliation." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003). Accordingly, the Court shall analyze Law's FLMA claim as one for interference, rather than retaliation.

Specifically, Law failed to submit any evidence indicating that he was suffering from a "serious health condition that [rendered him] unable to perform the functions of [his] position." *See* 29 U.S.C. § 2612(a)(D) (enumerating the circumstances entitling an eligible employee to leave). While Law informed Kinross that he was admitted to the hospital, he submitted no evidence that his condition was serious or that it rendered him unable to perform the functions of his position.

Second, Law failed to present any evidence that he provided notice of his intent to take FMLA leave. Under the FMLA, employees who are eligible for FMLA leave must provide advanced notice of their intent to take leave. *See* 29 U.S.C. § 2612(e); 29 C.F.R. § 825.302(a).[6] Whereas here, the need for leave is not foreseeable, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Moreover, the employee must provide "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). Finally, "[w]hen the need for leave is not foreseeable, an employee must [nevertheless] comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c).

While Law informed Kinross that he had been admitted to the hospital, there is nothing in the record to indicate that he requested leave or otherwise provided Kinross with any information regarding the reasons for his supposed request. Nor is there anything in the record to indicate that Law complied with Kinross' usual and customary notice and procedural requirements for requesting leave. Kinross' employee guidelines set forth the following procedure for leave requests:

> Requests for a leave of absence must be submitted in writing to the department head for approval by the General Manager. Such requests must state the reason for leave, the anticipated date the leave will commence, and the date the employee expects to return to work.

---

[6] Congress authorized the Department of Labor to issue implementing regulations for the FMLA. 29 U.S.C. § 2654. These regulations are entitled to deference under *Chevron USA, Inc. v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837, 843-44 (1984).

Doc. #30, Ex. A, p. 49.  Law concedes that he did not file a written request for leave in accordance with the above guidelines.  *See* Doc. #42, pp. 2-3.  Nevertheless, Law cites an email between management as proof that Kinross was aware of his need for leave.  *See* Doc. #42, pp. 2-3.  However, contrary to Law's assertion, the email merely indicates that Kinross was aware of his need to visit a doctor on the morning of April 5, 2010.[7]  Doc. #43, Ex. 1.  In fact, Sims' statements that "[he] called his cell phone at about 3:50 pm and left a message inquiring if he was coming back" and "[w]e assume that he will show up tomorrow morning" strongly support Kinross' argument that it had no reason to believe that the FMLA would apply.  *See id.*  Still, despite not having received the appropriate notice from Law, Kinross provided him with the forms required to request FMLA leave on April 12, 2010.  Doc. #30, Ex. L.  Law did not return the completed forms to Kinross in accordance with this request.  Doc. #30, Ex. B, ¶13.

Law does not deny that he received the forms.  *See* Doc. #46, p. 3.  Rather, Law argues that Kinross did not give him a date on which to return the forms or otherwise provide him with the required notice of any expectations it had or of the consequences of not meeting those expectations, such as failing to return the FMLA forms.  *See id.*  However, as Kinross correctly points out, an employer's obligation to "provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations" only arises after "an employee requests FMLA leave or . . . the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason[.]"  *See* 29 C.F.R. § 825.300(b) & (c).  In accordance therewith, Kinross provided Law with a United States Department of Labor "Notice of Eligibility and Rights & Responsibilities," which explicitly provided that "in order for us to determine whether your absence qualifies as FMLA leave, you must return the following information to us by April 28, 2010."  Doc. #46, Ex. W.  It is undisputed that Law failed to provide Kinross with any information upon which it could reasonably determine whether Law qualified for

---

[7] Kinross concedes that it was informed of Law's hospitalization on April 6, 2010.  *See* Doc. #46, p. 4.

7

FMLA leave. Accordingly, Law's argument in this regard is without merit.

Third, Law cannot establish that Kinross denied him FMLA benefits to which he was entitled. As the Court just detailed at length, Law failed to request leave and failed to provide sufficient information as to the reasons for his supposed leave request. Accordingly, Kinross was never able to make a determination as to whether the FMLA applied. Furthermore, the Court finds that Kinross has amply demonstrated that Law would not have otherwise been entitled to employment following his April 5, 2010 absence. "Although the FMLA create[s] a statutory right to reinstatement after taking FMLA leave, this right is not without limits. The FMLA is clear on this point: 'Nothing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken the leave.'" *Id.* at 778-79 (quoting 29 U.S.C. § 2614(a)(3)(B)). Thus, an employer does not violate the FMLA by denying restoration to employment where it demonstrates "that an employee would not otherwise have been employed at the time reinstatement is requested[.]" *Id.* at 780 (quoting 29 C.F.R. § 825.216(a)) (internal quotation marks omitted). Specifically, when "an employer defends against an interference claim," he must demonstrate "a legitimate reason to deny an employee reinstatement." *Sanders*, 657 F.3d at 779-80.

Here, Kinross has shown that its decisions to revoke Law's building security access and place him on paid leave were in direct response to Law's April 5, 2010 email, and had nothing to do with his FMLA leave. First, in immediate response to Law's April 5, 2010 email, Kinross decided to revoke Law's building and security access. *See* Doc. #30, Ex. G (email dated April 5, 2010, indicating that Law's building and security access had been revoked). At that time, Kinross was aware that Law had seen his doctor in the morning, but was unaware that his absence would be prolonged. *See id.* (email dated April 5, 2010, indicating an expectation that Law would "show up tomorrow morning"). Second, the evidence clearly shows that Law was placed on paid leave following Kinross' receipt of his April 5, 2010 email and determination that further investigation

was needed to address Law's assertions and accusations therein.  *See* Doc. #30, Ex. H (emails dated April 8 and 9, 2010, indicating that "the decision ha[d] been made to put [Law] on paid leave pending an investigation into the assertions and allegations made in his recent emails"); *see also* Doc. #30, Ex. I (letter to Law, dated April 9, 2010, confirming that he was being placed on paid leave effective immediately pending an investigation into the assertions and allegations made in Law's April 5, 2010 email).  At that time, Law had not filed a request for FMLA leave or otherwise indicated that he would need medical leave.

      Law does not dispute the facts as they relate to the revocation of his building security access and his subsequent paid leave suspension.  Rather, he asserts that "the proximity in time between [his] requesting leave for medical reasons and the dates of his suspension and termination [create] an inference that [Law's] FMLA leave [was] the reason, or at lease [sic] one of the reasons [Kinross] suspended and ultimately terminated [him]."  Doc. #42, p. 4.  The Court agrees that an employer runs afoul of the FMLA if it considers an employee's qualifying leave as even one factor amongst others in employment actions.  *See* 29 C.F.R. § 825.220(c).  Nevertheless, the Court finds Law's assertion in this regard to be extremely implausible under the facts of this particular case.  The decision to revoke Law's building security access was made before Kinross even became aware that Law might need or request leave.  Thereafter, Kinross acknowledged that "prior to being placed on paid leave, . . . [Law's] absence may have been for medical reasons[,]" and unequivocally provided Law with the opportunity to pursue FMLA leave by providing the requisite information such that Kinross could make a determination as to the FMLA's applicability.  *See* Doc. #30, Ex. L; *see also* Doc. #46, Ex. W.  Kinross' acknowledgment in this regard, however, does not support an inference that Kinross' decision to place Law on paid leave, effective April 9, 2010, was motivated even in part by Law's purported FMLA claim.  To the contrary, Kinross appears to have accepted that Law may be entitled to FMLA leave prior to his suspension.

      As to Law's formal termination, the evidence overwhelmingly indicates that the decision to terminate Law was made long before and independent of Law's supposed claim for FMLA leave

9

arose.[8]  *See* Doc. #30, Ex. B, ¶¶8, 14 ("In January 2010, Kinross made the decision to terminate Ron Law based on his inability to communicate with Kinross' managers and employees, his track record of making false allegations of retaliation against him, his history of asserting unsupported allegations of fraud, and his combative work manner." "Ron Law was terminated on May 14, 2010 for substantially the same reasons identified in January 2010 when the decision to terminate him was made, namely his inability to communicate with Kinross' managers and employees, his track record of making false accusations of retaliation against him, his history of asserting unsupported allegations of fraud, and his combative work manner.")[9]; Doc. #30, Ex. C (emails dated January 20, 2010, concerning Law's termination date); Doc. #30, Ex. D (emails dated February 25, 2010 and March 1, 2010, indicating a target date of mid-April "to separate [Law] from his employment" due to difficulties locating and hiring a replacement).  There is simply no indication that Law's purported FMLA claim had anything to do with his termination whatsoever.  *See Perez-Denison v. Kaiser Found. Health Plan of the Nw.*, 868 F.Supp.2d 1065, 1084 (D. Or. 2012) (finding significant the fact that defendants had made the decision to terminate plaintiff before she sought leave); *see also Santrizos v. Evergreen Fed. Sav. and Loan Assoc.*, No 06-886-PA, 2007 WL 3544211, at *5-7 (D. Or. Nov. 14, 2007) (determining that even if defendant altered plaintiff's effective termination date "because he requested leave, defendants have shown that the decision to terminate plaintiff was made before and independently of plaintiff's request for medical leave").

///

---

[8] Law's suggestion that Kinross would not have sent him to training sessions in March 2010 if it was planning on terminating does not create a disputed issue of material fact as to whether he was entitled to reinstatement.  Moreover, contrary to Law's averments, an employer's intentions and motivations are irrelevant to a determination of liability for FMLA interference.  *See Sanders*, 657 F.3d at 778 (agreeing with sister circuits that an employer's intent is not a relevant part of the entitlement inquiry under section 2615).

[9] Law's objection to the admission of Nathan Longenecker's Declaration is overruled.  As Assistant General Counsel for Kinross, Longenecker assuredly had personal knowledge of the events leading up to the present lawsuit.

Moreover, Law's suggestion that the investigation was commenced in order to look for "dirt" on him and only after he needed medical leave completely ignores the fact that Law's own email, sent the very morning he allegedly needed medical leave, prompted and necessitated the investigation in the first place.  Despite the temporal proximity of these events, the notion that Kinross would have initiated an investigation into Law's allegations and assertions in the absence of the very email in which Law made those allegations and assertions, is quite simply absurd.  The undisputed evidence clearly shows that Kinross had investigated these types of allegations and assertions in the past.  *See* Doc. #30, Ex. O; Doc. #30, Ex. P; Doc. #30, Ex. Q; Doc. #30, Ex. R.  As such, there is no reason to believe that Kinross would have treated these allegations and assertions any differently.  Nevertheless, Kinross had already made the decision to terminate Law, and the investigation that ensued following Law's April 5, 2010 email did not change this.  Thus, to the extent Law disputes that he misrepresented his qualifications to Kinross when he applied for the position, the Court finds this to be immaterial to a determination of whether Law was entitled to reinstatement following his suspension.  Finally, even if Law's ultimate termination date was postponed pending an investigation into his April 5, 2010 email, no reasonable juror could conclude that Law's purported entitlement to FMLA leave had anything whatsoever to do with the investigation or his ultimate termination.  *See Berg v. TXJ Cos.*, No. CV 12-11-M-DLC, 2013 WL 3242472, at *8 (D. Mont. June 24, 2013) (finding that the temporal proximity between plaintiff's FMLA leave had nothing to do with her termination where investigation was initiated in response to complaints, not plaintiff's FMLA leave).

In sum, Law cannot establish the elements of an FMLA interference claim because there is nothing in the record to indicate that Law was entitled to FMLA leave or that Kinross denied him FMLA benefits to which he was entitled.  Accordingly, for all of the aforementioned reasons, the Court concludes that Kinross is entitled to summary judgment on Law's FMLA interference claim.

///

///

### B. Breach of Contract

In Nevada, it is indisputable that in the absence of a written contract, employment is presumptively at-will. *See Brooks v. Hilton Casinos, Inc.*, 959 F.2d 757, 759 (9th Cir. 1992). A plaintiff bears the burden of rebutting this presumption by establishing that he or she was employed under a contract. *Id.* Here, Law has failed to demonstrate the existence of a valid contract. Rather, the evidence indisputably shows that Law was an at-will employee. *See* Doc. #30, Ex. A, pp. 4, 9. Moreover, the employment guidelines explicitly provide that "these Guidelines do not create an express or implied contract of employment between Kinross and me." *Id.* at 4. Law appears to concede as much in his Reply, wherein he does not contest his at-will status. *See* Doc. #42, p. 6.

Rather, for the first time in this litigation, Law creatively asserts that his breach of contract claim is based on Kinross' "Whistleblower Policy," which states that "[Kinross] will not discharge, demote, suspend, threaten, harass or in any manner discipline, discriminate or retaliate" against an employee for engaging in protected activities. Doc. #43, Ex. 5, p. 7. Law's Complaint, on the other hand, alleges that Kinross breached "said contract" when it failed to pay him merit increases and failed to reimburse him for expenses he incurred on behalf of Kinross.[10]  Doc. #1, ¶35. It is fundamental that a plaintiff may not obtain relief on the basis of factual allegations not set forth in the complaint. *See Rent Info. Tech., Inc. v. Home Depot U.S.A., Inc.*, 268 Fed. Appx. 555, 558 (9th Cir. 2008) (finding that district court properly granted summary judgment where plaintiff abandoned its original theory of relief contained in the complaint and advanced a new theory not supported by facts alleged in the complaint); *see also Daury v. Smith*, 842 F.2d 9, 15 (1st Cir. 1988) (stating that the court "will not rewrite plaintiff's complaint to contain a count that was not included in it [by deciding issues argued but not pleaded]"). On this basis alone, the Court finds that Kinross is entitled to summary judgment on Law's breach of contract claim. Nevertheless, even if the Court were to consider Law's novel theory of relief, the terms of the "Whistleblower

---

[10] Law sets forth no evidence related to these allegations, nor does he argue that summary judgment is not appropriate as to the breach of contract claim that was actually pled in his Complaint.

Policy" do not contemplate the creation of a contract and Law sets forth no evidence in support of the notion that it created one, either express or implied. Accordingly, on this basis as well, the Court finds that Kinross is entitled to summary judgment on Law's breach of contract claim.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing

Nevada law recognizes the existence of an implied covenant of good faith and fair dealing in every contract. *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 792-93 (1993). Because Law failed to establish the existence of a valid employment contract, he does not have a viable claim for breach of the implied covenant of good faith and fair dealing. Accordingly, Kinross is entitled to summary judgment on this claim as well.

### D. Tortious Retaliation and Discharge in Violation of Public Policy

In *Hansen v. Harrah's*, 100 Nev. 60 (1984), the Nevada Supreme Court recognized the availability of tort liability in at-will employment relationships "founded upon strong public policy." *Sands Regent v. Valgardson*, 105 Nev. 436, 439 (1989). Nevertheless, "public policy tortious discharge actions are severely limited to those rare and exceptional cases where the employer's conduct violates strong and compelling public policy." *Id.* at 440.

<u>Illegal Conduct</u>

Law does not dispute that his claim that Kinross terminated him for refusing to participate in illegal conduct is baseless. *See* Doc. #42; *see also* Doc. #46, p. 8. Accordingly, Kinross is entitled to summary judgment on this claim.

<u>Worker's Compensation</u>

In Nevada, there is a "public policy exception to the at-will [employment] rule making retaliatory discharge for filing a workmen's compensation claim actionable in tort." *Hansen*, 100 Nev. at 64. Nevertheless, Law failed to proffer any evidence that he actually filed a worker's compensation claim. In fact, Law admitted that he did not file a claim.[11] *See* Doc. #46, Ex. X,

---

[11] Kinross' employee manual provides that "[i]f an employee sustains a work-related accident or illness, regardless of how insignificant, the employee should immediately report the injury or illness

13

49:9-12.  Moreover, his testimony that he did not ask to file a claim (Doc. #46, Ex. X, 49:11-12) directly contradicts his claims that he made repeated worker's compensation inquiries (Doc. #43, Ex. 2, ¶12).  Accordingly, the Court declines to give weight to Law's statements in this regard.  Moreover, as Kinross aptly points out, Law testified that he began complaining to his supervisors of a workplace injury in August 2009, nine months prior to his termination.  *See* Doc. #46, Ex. X, 47:14 - 48:24.  This fact undermines Law's argument that the proximity in time establishes a casual link between his request for worker's compensation and his termination.  Finally, Law does not allege that his April 2010 doctors visit or hospital stay were the result of work-related injuries.  In sum, there is simply no evidence in the record to suggest that Law filed a worker's compensation claim or that his supposed request for worker's compensation had anything to do with his termination.  Rather, the evidence overwhelmingly demonstrates that Law was discharged for legitimate reasons under Nevada law.  Because no reasonable juror could find in favor of Law in this regard, the Court finds that Kinross is entitled to summary judgment on this claim.

        Free Speech and Access to Courts

        As Kinross points out, the First Amendment free speech provision expresses a guarantee only against action taken by the government, not by private employers.  *See Hudgens v. N.R.L.B.*, 242 U.S. 507, 513 (1976).  As such, "the First Amendment prohibition against government intrusions into free speech fails to establish public policy forbidding free-speech-based terminations by private employers.  To find otherwise would unreasonably require private employers to realize they must comply with requirements from which they are exempt or suffer the possibility of tort liability."  *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 81-82 (2004).  Similarly, "the First Amendment right of access to the courts does not support a public policy sufficient for a

---

to their supervisor or the safety department as soon as practical but certainly before finishing the work shift.  Prompt reporting is required to comply with legislation, to ensure employees receive prompt treatment for the illness or injury, and to initiate worker's compensation procedures.  Failure to report the incident promptly and complete all necessary forms can delay or forfeit benefits."  Doc. #30, Ex. A, p. 17.

tortious discharge claim against private employers discharging employees who sue customers, clients or patients." *Id.* at 81; *see also Kersey v. Costco Wholesale Corp.*, 210 Fed. Appx. 561, 562 (9th Cir. 2006) (recognizing that "The Nevada Supreme Court has never held that a private employer who discharges an employee for exercising her constitutional right to access the courts is liable for tortious discharge"). Accordingly, the Court rejects these theories as a basis on which Law may seek recovery for tortious discharge and finds that Kinross is entitled to summary judgment on these claims.

IT IS THEREFORE ORDERED that Kinross' Motion for Summary Judgment (Doc. #30) is GRANTED. The clerk of court shall enter judgment in favor of Defendant Kinross, and against Plaintiff Law.

IT IS SO ORDERED.

DATED this 15th day of April, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE